## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DEMETEILUS GREENE,

       Petitioner,

v.                                     Case No. 04-73926

PAUL RENICO,

       Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

Petitioner Demeteilus Greene, a Michigan prisoner, has filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 asserting that he is being held in violation of his constitutional rights.  In 2000, Petitioner was convicted of first-degree murder, Mich. Comp. Laws § 750.316, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b, following a jury trial in the Wayne County Circuit Court.  He was sentenced to life imprisonment without the possibility of parole and a consecutive term of two years imprisonment.  In his pleadings, he raises twenty-one claims concerning his confrontation rights, prosecutorial misconduct, the effectiveness of trial counsel, the trial court's denial of an evidentiary hearing on a request to suppress identification testimony, actual innocence arising from new evidence, the sufficiency of the evidence, the late disclosure of evidence, the right to present a defense, and the effectiveness of appellate counsel.  Respondent has filed an answer to the petition contending that the claims are not cognizable, lack merit,

and/or are barred by procedural default.  For the reasons stated, the court concludes

that the petition must be denied and a certificate of appealability should not issue.

## I. BACKGROUND

Petitioner's convictions arise from the shooting death of a security guard at a bar

in Detroit, Michigan, in November 1999.  On Petitioner's direct appeal in the Michigan

courts, defense counsel summarized the facts as follows:

> The prosecutor said that Mr. Greene shot Khalil Johnson, a security guard at the State Fair lounge in Detroit, after Mr. Johnson put one of Mr. Greene's friends out of the bar because that friend was involved in a disturbance. The defense said that the police arrested the wrong person, and that Mr. Greene was not at the bar when the shooting occurred.

> Medical testimony established that the cause of Khalil Johnson's death was a single gunshot wound to the chest. [Trial Tr. 60, 62, July 18, 2000, Dkt. # 24-7.]

> Calvin Pye, a security guard at the State Fair lounge, testified that a group of approximately fifteen people were there on the night of November 19-20, 1999, for a birthday party. One of the men in the group was involved in a disturbance in the picture room, a separate room within the bar where a photographer takes pictures of bar patrons for a fee, and when Mr. Pye attempted to escort the man out, the man swung a bottle at him. Some patrons began to leave the bar, including Defendant Greene, whom Mr. Pye heard say, "Flick 'em, flick 'em" as he was leaving. Mr. Pye and the man who had caused the disturbance fell to the floor in a hallway between the picture room and the front door, and Mr. Pye heard two shots. Khalil Johnson was struck by a bullet. [Trial Tr. 133, 135-40, July 17, 2000, Dkt. # 24-6.]

> Lashawanna Baskerville, a waitress in the bar that evening, testified that she saw John Davis and Demeteilus Greene together in the bar before the disturbance broke out in the picture room. Men with bottles surrounded security guard Calvin Pye during the course of the disturbance. Mr. Pye and Khalil Johnson grabbed John Davis and walked with him toward the front door. When they put Mr. Davis out of the bar, some of the men who had been with him also left. One of those men was Defendant Greene, whom Ms. Baskerville knew from the neighborhood. Ms. Baskerville said that Mr. Greene returned to the doorway of the bar and fired a gun. He then left the bar parking lot in a burgundy car with tinted windows. He was wearing a red or burgundy jersey. [*Id.* at 163, 165-73; Trial Tr. 5, 48, July 18, 2000.]

2

The defense sought to elicit evidence that there had been an outstanding felony arrest warrant against prosecution witness Harold Outley since July of 1998, and that the police had chosen not to arrest Mr. Outley. [Trial Tr. 7-10, July 17, 2000; Trial Tr. 99, July 18, 2000.] Outside the presence of the jury, Sergeant Walter Bates of the Detroit Police Department testified that he was unaware of the warrant when he questioned Mr. Outley shortly after the shooting, and the court ruled that such evidence was inadmissible, citing [Michigan Rule of Evidence] 609. [Trial Tr. 94-99, July 18, 2000.]

The bar's security supervisor, Harold Outley, then testified that he heard Defendant Greene say, "I'm going to get my shit" at about the same time Khalil Johnson was escorting another man out of the bar. Mr. Greene left and then returned to the front doorway of the bar. Mr. Outley testified that he was standing only five feet from Mr. Greene when Mr. Greene extended his arm into the bar and fired two shots. [*Id.* at 104-08.] Two other security guards, Charles Fisher and Robert Edwards, heard the shots but did not get a look at the shooter. [*Id.* at 68, 81.] Mr. Fisher said that although he did not see the shooter's face, he did see a man run to the door of the bar, fire a gun and then leave in a dark Cadillac. The man was wearing a black leather jacket and blue jeans. [*Id.* at 68, 75.]

Demarco Frierson, who was working in the bar's coat check room that night, identified Defendant Greene as the man he saw run to a car with tinted windows just as another man was being escorted out of the bar. Mr. Frierson testified that Defendant Greene returned to the door of the bar, fired two shots, and then went to his car and drove off. [*Id.* at 134-39.]

John Davis testified that he was the man who was ejected from the bar on the night of November 20, 1999. Mr. Davis testified that his sister, Cassandra Davis, and Defendant Greene had a child together, and that Cassandra Davis and some friends were celebrating Ms. Davis's birthday at the bar that evening. John Davis said that he had been drinking. As a security guard attempted to escort him to the front door of the bar, he saw Defendant Greene standing near the door. Mr. Greene left for about five minutes. When he returned to the bar, he stuck his hand "in there," and John Davis heard two shots. A security guard fell to the floor and said, "Your boy shot me," Mr. Greene then ran to a Cadillac and left. [*Id.* at 156, 159-60.] John Davis said that later that morning he made a statement to police in which he identified Defendant Greene as the shooter. He said that a police detective told him that he would not see his children at Christmas if he did not make a statement. [Trial Tr. 42, 46-49, July 19, 2000, Dkt. # 24-8.]

The defense witnesses gave a very different account of the events. All the defense witnesses, including Demeteilus Greene, agreed that they had

3

been at the State Fair Lounge that night. but they testified that they left the lounge before the shooting occurred.

Antoine Lockett testified that his cousin, David "Byron" Allen, drove Mr. Lockett, Defendant Greene and a friend named "Juan" to the lounge in Mr. Allen's gray Toyota minivan. They witnessed the altercation between John Davis and a security guard and decided to leave. They all went back to Mr. Lockett's house on Spring Garden for about fifteen minutes, and then they took Mr. Greene to his girlfriend's house on Troester Street. [*Id.* at 96-98, 104-06, 111.]

David Allen confirmed this testimony, except that he testified that when they left the bar they returned to his house on Spring Garden where the four of them spent the night, and he drove Mr. Greene to his girlfriend's house the next day. [*Id.* at 127, 130, 138-42.]

Genevieve Opara testified that she lived across the street from Defendant Greene on Cedar Grove Street. She left the party at the lounge in her car at the same time he and his friends left in the gray minivan. That was before any disturbance or shooting occurred. [Trial Tr. 10-12, July 24, 2000, Dkt. # 24-10.] When she arrived home, she saw the minivan parked across the street in front of Mr. Greene's house. People got out of the van and went into the house and began playing loud music. Ms. Opara variously testified that she specifically saw Defendant Greene get out of the van and that she did not actually see who got out of the van. [*Id.* at 10-14, 20, 24, 27.]

Demeteilus Greene testified that he arrived at the State Fair Lounge at around 11:30 p.m. with his three friends. He had his picture taken with a group of people, and he was wearing a red jersey at the time. It looked like there was going to be trouble in the bar when a guard tried to eject John Davis, and Defendant Greene and Antoine Lockett decided to leave. [Trial Tr. 156, 162, 164-65, July 19, 2000.] They left in the minivan and went to Antoine Lockett's house on Spring Garden. After they spent a few minutes there, David Allen drove Mr. Greene to his girlfriend's house, where he spent the night. [*Id.* at 167, 169.] Defendant Greene identified photographs of a car with tinted windows, which he said belonged to John Davis. [Trial Tr. 49, July 24, 2000.]

The jury found Mr. Greene guilty as charged [Trial Tr. 22-23, July 25, 2000, Dkt. # 24-11], and on October 20, 2000, the court sentenced him to prison terms of mandatory life and two years. [Sentencing Tr. 10-11, Oct. 20, 2000, Dkt. # 24-13.]

4

(Def.'s Br. on Appeal 1-4, *People v. Greene*, No. 232008 (Mich. Ct. App. Aug. 1, 2001),

Dkt. # 24-14, at 8-11 (footnote omitted).)

Following his convictions and sentencing, Petitioner filed an appeal of right with

the Michigan Court of Appeals raising the following claims:

I.     The trial court violated his confrontation rights when it denied his request to cross-examine a prosecution witness for bias.

II.    The prosecutor committed misconduct by suggesting in closing that when Petitioner said "Flick 'em" before the shooting, it "probably" meant shooting the victim.

III.   The prosecutor committed misconduct by arguing that "everybody in the courtroom" knew that Petitioner's alibi witness was lying.

IV.    The prosecutor committed misconduct by arguing that the defense was trying to mislead them.

V.     The prosecutor committed misconduct by asserting facts beyond the record.

VI.    The prosecutor committed misconduct by arguing that its witnesses "had no reason to lie."

VII.   The prosecutor committed misconduct by referring to Petitioner and his witnesses as liars.

VIII.  The prosecutor improperly vouched for his case by stating that it was "a serious case to the People."

IX.    He is entitled to relief based on the cumulative effect of the prosecutor's errors.

X.     Trial counsel was ineffective for failing to move to exclude the "flick 'em" statement.

XI.    Trial counsel was ineffective for failing to move for the appointment of an investigator.

XII.   Trial counsel was ineffective for failing to move for a missing witness instruction.

5

XIII.   Trial counsel was ineffective for failing to argue for the admission of impeaching evidence against prosecution witness Harold Outley.

XIV.   Trial counsel was ineffective for failing to move to suppress identification testimony.

XV.   Trial counsel was ineffective for failing to object to the instances of prosecutorial misconduct.

XVI.   The trial court erred in denying his request for evidentiary hearing.

The Michigan Court of Appeals denied relief on those claims and affirmed Petitioner's convictions and sentence. *People v. Greene*, No. 232008, 2002 WL 31310150 (Mich. Ct. App. Oct. 15, 2002) (per curiam). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Greene*, 664 N.W.2d 218 (Mich. 2003) (table decision).

In 2004, Petitioner filed a petition for a writ of habeas corpus with this court, which was held in abeyance to allow him to return to state court to exhaust his remedies as to additional issues. Petitioner subsequently filed a motion for relief from judgment with the state trial court raising the following claims:

I.   He is entitled to a new trial based upon newly-discovered evidence.

II.   There was insufficient evidence to support his convictions.

III.   The prosecutor committed misconduct by failing to timely disclose exculpatory evidence that supported his defense theory.

IV.   The prosecutor's failure to provide the exculpatory evidence deprived him of the opportunity to present a complete defense.

V.   Deprivation of his right to appeal.

The trial court ruled that Petitioner had failed to establish good cause and actual prejudice under Michigan Court Rule 6.508(D)(3) and denied the motion. *People v.*

6

*Greene*, No. 00-000764 (Mich. Cir. Ct. Aug. 27, 2007) (order denying relief from judgment), Dkt. # 24-17, at 48-52.  Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals, which was denied for failure "to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  *People v. Greene*, No. 287464 (Mich. Ct. App. Mar. 6, 2009) (order), Dkt. # 24-17, at 61.  Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was similarly denied.  *People v. Greene*, 774 N.W.2d 905 (Mich. 2009) (order).

Petitioner thereafter moved to reopen this case and proceed on an amended petition, which was ultimately determined to be raising the same claims presented to the state courts on direct appeal and collateral review of his convictions.  The court granted the motion and reopened the case.  Respondent has filed an answer and a supplemental answer to the petition contending that it should be denied because the claims are not cognizable, lack merit, and/or are barred by procedural default.  Petitioner has filed replies to those answers.

## II.  STANDARD

The Antiterrorism and Effective Death Penalty Act ("AEDPA") imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [United States Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).  "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case."  *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694.  "[T]he state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citation omitted) (citing *Williams*, 529 U.S. at 409).  "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997)), "and 'demands that state-court decisions be given the benefit of the doubt,'" *id.* (quoting *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The United States Supreme Court recently held that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 131 S.

8

Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The

Supreme Court emphasized that "even a strong case for relief does not mean the state

court's contrary conclusion was unreasonable."  *Id.* (citing *Lockyer v. Andrade,* 538 U.S.

63, 75 (2003)).  Pursuant to § 2254(d), "a habeas court must determine what arguments

or theories supported[,] or . . . could have supported, the state court's decision; and then it

must ask whether it is possible fairminded jurists could disagree that those arguments or

theories are inconsistent with the holding in a prior decision" of the Supreme Court.  *Id.*

Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the

state court's rejection of his claim "was so lacking in justification that there was an error

well understood and comprehended in existing law beyond any possibility for fairminded

disagreement."  *Id.* at 786-87,

Section 2254(d)(1) limits a federal habeas court's review to a determination of

whether the state court's decision comports with clearly established federal law as

determined by the Supreme Court at the time the state court renders its decision.

*Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)

(noting that the Supreme Court "has held on numerous occasions that it is not 'an

unreasonable application of clearly established Federal law' for a state court to decline to

apply a specific legal rule that has not been squarely established by this Court").  Section

2254(d) "does not require a state court to give reasons before its decision can be deemed

to have been 'adjudicated on the merits.'"  *Harrington*, 131 S. Ct. at 785.  Furthermore, it

"does not require citation of [Supreme Court] cases—indeed, it does not even require

*awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of

the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also*

9

*Mitchell*, 540 U.S. at 16.  While the requirements of "clearly established law" are to be determined by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's ruling.  *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003) and *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002)).

A state court's factual determinations are presumed correct on federal habeas review.  28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption only with clear and convincing evidence.  *Id.*; *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).  Moreover, review under § 2254(d)(1) is "limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

### III.  ANALYSIS

### A.  Direct Appeal Claims

### 1.  *Limit on Cross-Examination*

Petitioner first asserts that he is entitled to habeas relief because the trial court violated his confrontation rights by denying his request to cross-examine a prosecution witness for bias.  Specifically, he claims that he was not allowed to question the bar's security supervisor, Harold Outley, about the fact that Outley had not been arrested on an outstanding warrant for a parole violation prior to trial.

The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to confront the witnesses against him.  U.S. Const. amend VI.  "The main and essential purpose of confrontation is to secure for the opponent the

10

opportunity of cross-examination."  *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974)

(internal quotation marks omitted).

> Cross-examination is the principal means by which the believability of a
> witness and the truth of his testimony are tested.   Subject always to the
> broad discretion of a trial judge to preclude repetitive and unduly harassing
> interrogation, the cross-examiner is not only permitted to delve into the
> witness' story to test the witness' perceptions and memory, but the cross-
> examiner has traditionally been allowed to impeach, i.e., discredit, the
> witness.

*Id.* at 316.  The right of cross-examination, however, is not absolute.  "[T]rial judges

retain wide latitude insofar as the Confrontation Clause is concerned to impose

reasonable limits on such cross-examination based on concerns about, among other

things, harassment, prejudice, confusion of the issues, the witness' safety, or

interrogation that is repetitive or only marginally relevant."  *Delaware v. Van Arsdall*, 475

U.S. 673, 679 (1986); *see also Jordan v. Warden, Lebanon Corr. Inst.*, 675 F.3d 586,

594 (6th Cir. 2012).

In this case, the Michigan Court of Appeals assumed that the trial court erred, but

determined that any error was harmless.  The court explained, in pertinent part:

> In this case, the supervisor's testimony was not, as defendant
> contends, the only testimony demonstrating premeditation in the victim's
> shooting death. A security guard testified that he heard defendant say "flick
> 'em" several times as he left the bar. A waitress testified that defendant left
> the bar, returned shortly thereafter with the gun, and shot the victim. The coat
> check attendant testified that he saw defendant run to his car, grab a gun,
> run back to the door of the bar just before he heard shots, run back to the
> car, and drive off. The unruly patron being escorted out the door testified that
> he saw defendant leave the bar and return a few minutes later with a gun and
> shoot the victim. The patron further testified that the victim said, "Your boy
> shot me."
>
> The fact that defendant had left the bar for several minutes before
> returning with the gun, which he had readily available in his car, indicates that
> defendant had time to "take a second look" before coming back to the bar
> and shooting the victim. [*People v. Anderson*, 531 N.W.2d 780, 786 (Mich.

11

Ct. App. 1995).] While the victim, in particular, may not have been his specific target, defendant was obviously targeting the security guards at the bar who had forced him and his friends to leave. Because of the substantial, properly admitted evidence, we conclude that it is clear beyond a reasonable doubt that a rational jury would have found defendant guilty absent the alleged error. [*People v. Mass*, 628 N.W.2d 540, 554 n.29 (Mich. 2001).] Therefore, even assuming arguendo that error occurred, it was harmless. *Id.*; [*People v. Minor*, 541 N.W.2d 576, 579-80 (Mich. Ct. App. 1995)].

*Greene*, 2002 WL 31310150, at *2.

The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *see also Fry v. Pliler*, 551 U.S. 112, 117-18 (2007) (confirming that *Brecht* standard applies in "virtually all" § 2254 cases); *Ruelas v. Wolfenbarger*, 580 F.3d 403, 412 (6th Cir. 2009) (ruling that *Brecht* is "always the test" in this circuit). Confrontation errors, like other trial errors, are subject to harmless error analysis. *Van Arsdall*, 475 U.S. at 684; *Jordan*, 675 F.3d at 598.

Having reviewed the record, this court does not consider unreasonable the decision that limiting Outley's cross-examination was harmless. While further cross-examination would have disclosed the fact that Outley had not been arrested for parole violations, such impeachment evidence was not particularly strong given the investigating officer's testimony that he did not know about the warrant at the time he interviewed Outley and given that there is no indication in the record that Outley had any incentive to implicate Petitioner in the crime. Moreover, even if such evidence would have called into doubt the veracity of Outley's testimony, the jury could have

disbelieved him and still convicted Petitioner based upon the strength of the remaining evidence. The prosecution presented several witnesses who identified Petitioner as the shooter and indicated that he acted with the requisite intent to support his convictions. In light of these considerations, habeas relief is not warranted on this claim.

### 2. Prosecutorial Misconduct

Petitioner next contends that he is entitled to habeas relief because the prosecutor engaged in misconduct by: suggesting that Petitioner's "Flick 'em" remarks before the shooting "probably" meant shoot the victim; arguing that "everybody in the courtroom" knew that Petitioner's alibi witness was lying; arguing that defense counsel was trying "to detour" the jury away from the "road" that established Petitioner's guilt; asserting facts not in evidence by stating that he had never before seen a picture presented to the jury by defense counsel; arguing that prosecution witnesses "had no reason to lie"; questioning Petitioner about whether other witnesses were lying; and improperly vouching for his case by stating that it was "a serious case to the People." Petitioner further asserts that he is entitled to habeas relief due to the cumulative effect of the claimed errors. Respondent contends that these claims are barred by procedural default and lack merit.

### a. Procedural Default

Federal habeas relief may be precluded on a claim that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 81-85 (1977); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991). The doctrine of procedural default is applicable when: (1) a petitioner fails to comply with a state procedural rule; (2) the rule is actually enforced in the petitioner's

case; and (3) the procedural rule is "an adequate and independent state ground" to foreclose review of the petitioner's federal constitutional claim. *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2005); *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell,* 244 F.3d 533, 539 (6th Cir. 2001). "[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989) (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985)). The last explained state court judgment should be used to make this determination. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

The state procedural rule at issue here is Michigan's contemporaneous-objection rule, which requires a criminal defendant to object to or request a curative jury instruction regarding prosecutorial misconduct during trial in order to preserve the issue for appeal. *People v. Brown*, 755 N.W.2d 664, 679 (Mich. Ct. App. 2008). Petitioner concedes that he failed to object to the prosecutor's contested remarks during trial, and the Michigan Court of Appeals enforced the contemporaneous-objection rule by reviewing Petitioner's claims about the prosecutor's comments for "plain error." *See Greene*, 2002 WL 31310150, at *2-3. "[A] state appellate court's plain-error review of a procedurally defaulted claim does not waive the procedural default," and "the contemporaneous-objection rule is an adequate and independent state ground barring federal habeas review." *Awkal v. Mitchell*, 613 F.3d 629, 648 (6th Cir. 2010), *cert. denied*, 131 S. Ct. 1002 (2011). The court therefore concludes that all three elements of procedural default are satisfied here: Petitioner violated a state procedural rule, the

14

last state court to review his claim in a reasoned opinion enforced the rule, and the state

court's reliance on the rule was an adequate and independent state ground foreclosing

review of the federal claim.

### b. Cause and Prejudice to Excuse Default

A state prisoner who fails to comply with a state's procedural rules waives the

right to federal habeas review absent a showing of cause for noncompliance and actual

prejudice resulting from the alleged constitutional violation, or a showing of a

fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

To establish cause, a petitioner must demonstrate that some external impediment

frustrated his ability to comply with the state's procedural rule. *Murray v. Carrier*, 477

U.S. 478, 488 (1986). Such impediments include interference by officials, attorney error

rising to the level of ineffective assistance of counsel, or a showing that the factual or

legal basis for a claim was not reasonably available. *McCleskey v. Zant*, 499 U.S. 467,

493-94 (1991). In this case, Petitioner points to ineffective assistance of trial counsel as

cause to excuse his procedural default. In order to establish ineffective assistance of

counsel, the petitioner must show "that counsel's performance was deficient" and "that

the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S.

668, 687 (1984); *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).

Petitioner cannot establish that trial counsel was constitutionally ineffective for

failing to object to the alleged prosecutorial misconduct. While prosecutors must

"refrain from improper methods calculated to produce a wrongful conviction," *Berger v.*

*United States*, 295 U.S. 78, 88 (1935), the majority of the challenged statements by the

prosecutor were not improper, and so Petitioner's trial counsel had no obligation to

15

challenge them, *see Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998)

("Counsel was not required to raise meritless arguments to avoid a charge of ineffective

assistance of counsel."); *McQueen v. Scroggy*, 99 F.3d 1302, 1328 (6th Cir. 1996) ("It is

not ineffective assistance to fail to raise erroneous claims."), *overruled on other grounds

by In re Abdur'Rahman*, 392 F.3d 174 (6th Cir. 2004) (en banc).  The prosecutor's

argument that the "Flick 'em" comments before the shooting "probably" meant shoot the

victim is a permissible argument about the reasonable inferences that can be drawn

from the evidence.  *See Byrd v. Collins*, 209 F.3d 486, 535-36 (6th Cir. 2000).

When evaluated in context, the prosecutor's remarks about the believability of

various witnesses—including his statements that  "everybody in the courtroom" knew

that Petitioner's alibi witness was lying and that the prosecution witnesses "had no

reason to lie"—while perhaps inartfully worded, were allowable as arguments about the

facts from which the jury could evaluate those witnesses' credibility.  *See Cristini v.

McKee*, 526 F.3d 888, 902 (6th Cir. 2008) (holding prosecutor's comment that witness

has lied not improper when "coupled with a detailed analysis of the record").

Much the same can be said of the prosecutor's metaphor that defense counsel

was trying "to detour" the jury away from the "road" that established Petitioner's guilt.

Rather than an inappropriate personal attack on defense counsel or an improper

argument that counsel is attempting to mislead the jury, *West v. Bell*, 550 F.3d 542, 565

(6th Cir. 2008) (citing *Broom v. Mitchell*, 441 F.3d 392, 412-13 (6th Cir. 2006)), it was

instead more akin to the characterization of a defense claim as a red herring, smoke

screen, or distraction, *see United States v. Bernard*, 299 F.3d 467, 487-88 (5th Cir.

2002); *United States v. Rivera*, 971 F.2d 876, 883 (2d Cir. 1992).  In other words, it was

16

an argument that the evidence adduced tending to show Petitioner's guilt was more persuasive than the evidence presented by the defense.

Neither did the prosecutor wrongfully assert facts not in evidence. *See Darden v. Wainwright*, 477 U.S. 168, 181-82 (1986); *Donnelly v. DeChristoforo*, 416 U.S. 637, 646 (1974); *Hodge v. Hurley*, 426 F.3d 368, 380-81 (6th Cir. 2005). The record indicates that, when the prosecutor made an isolated remark that he had never before seen a photograph presented by the defense of John Davis's car, he was only trying to discount the evidentiary value of the photograph and challenge the defense argument that John Davis was the shooter and had fled the scene in that car.

Finally, the prosecutor's statement that Petitioner's case was "a serious case to the People" was not an improper expression of his personal beliefs and opinions about the case. *See, e.g.*, *United States v. Young*, 470 U.S. 1, 8-9 (1985); *Gall v. Parker*, 231 F.3d 265, 312 (6th Cir. 2000). Rather, the prosecutor simply acknowledged his energetic attitude, stressed the importance of the case, and argued for a conviction based upon the evidence.

Even if some of the prosecutor's remarks may have bordered on the impermissible, none were so flagrant as to give rise to a constitutional claim of prosecutorial misconduct. *See Donnelly*, 416 U.S. at 643 (holding that criminal defendant has viable constitutional claim when prosecutorial misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process."); *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) ("[T]o constitute the denial of a fair trial, prosecutorial misconduct must be so pronounced and persistent that it permeates the entire atmosphere of the trial, or so gross as probably to prejudice the defendant."

17

(citation and internal quotation marks omitted)).  The prosecutor's questioning of

Petitioner on cross-examination as to whether various prosecution and defense

witnesses were lying was likely improper, since a prosecutor generally cannot ask a

witness to comment on the credibility of other witnesses.  *United States v. Dickens*, 438

F. App'x 364, 369-70 (6th Cir. 2011) (collecting cases); *People v. Buckey*, 378 N.W.3d

432, 440 (Mich. 1985).  The prosecutor's inquiry, however, was not so flagrant as to

render Petitioner's trial fundamentally unfair.  The prosecutor's questions, while

deliberate, were isolated in nature and not misleading or overly prejudicial.  A review of

the record indicates that the prosecutor was trying to highlight the discrepancies within

and between Petitioner's testimony and that of the other witnesses.  Given such

circumstances, defense counsel's failure to object cannot be considered an omission

"outside the wide range of professionally competent assistance" instead of a decision

made "in the exercise of reasonable professional judgment."  *Strickland*, 466 U.S. at

690.  Petitioner's trial counsel, therefore, did not render constitutionally deficient

representation by neglecting to object to the prosecutor's questions and remarks that

Petitioner now claims amount to prosecutorial misconduct.

Moreover, to the extent that any of the prosecutor's statements could be seen as

improper, Petitioner cannot establish actual prejudice resulting from defense counsel's

failure to object.  The prosecutor's comments, while deliberate, were not misleading nor

inherently prejudicial when considered in context and in light of the record.  Any

potential prejudice to Petitioner was mitigated by the fact that the trial court instructed

the jury about the elements of the crime and the burden of proof and explained that the

attorneys' arguments are not evidence.  Jurors are presumed to follow the trial court's

instructions.  *Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors . . . take an oath to follow the law as charged, and they are expected to follow it." (citing *Adams v. Texas*, 448 U.S. 38 (1980))).  Additionally, the prosecution presented significant evidence of Petitioner's guilt at trial, including eyewitness testimony from bar employees and Petitioner's own acquaintances, identifying him as the shooter. Petitioner cannot show that the prosecutor's arguments were improper and/or so flagrant that he was denied a fundamentally fair trial.  Petitioner has thus failed to establish either cause or prejudice to excuse his procedural default.

### c. Fundamental Miscarriage of Justice

Petitioner has also not shown that a fundamental miscarriage of justice has occurred that will allow the court to consider the merits of his prosecutorial misconduct claims, notwithstanding his procedural default.  The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent.  *Schlup v. Delo,* 513 U.S. 298, 326-27 (1995).  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623-24 (1998) (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).  "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."  *Schlup*, 513 U.S. at 324.  Petitioner has made no such showing.  Although he points to "new" evidence that allegedly establishes his innocence—namely, a forensic report and statements by the EMT personnel about

19

comments made by the victim shortly before his death—this evidence was available at the time of trial and is not newly discovered.  Accordingly, Petitioner's prosecutorial misconduct claims are barred by procedural default and do not warrant habeas relief.

### 3. Effectiveness of Trial Counsel

Petitioner next asserts that trial counsel was ineffective for failing to move to exclude the "flick 'em" statement, failing to move for the appointment of an investigator, failing to move for a missing witness instruction, failing to sufficiently argue for the admission of impeachment evidence against witness Harold Outley, failing to properly move to suppress identification testimony, and failing to object to the claimed instances of prosecutorial misconduct.

In *Strickland*, the Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received the ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient.  *Strickland*, 466 U.S. at 687.  "This requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.* Second, the petitioner must establish that counsel's deficient performance prejudiced the defense.  Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.  *Id.*

As to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance.  *Id.* at 690.  The reviewing court's scrutiny of counsel's performance is highly deferential.  *Id.* at 689.  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable

20

professional judgment." *Id.* at 690.  The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.  *Id.* at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  A reasonable probability is one that is "sufficient to undermine confidence in the outcome." *Id.*  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 686.

The Supreme Court has recently confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review, due to the deference accorded to trial attorneys and to state courts reviewing their performance.  "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S. Ct. at 788 (citations omitted).  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Citing the *Strickland* standard as set forth in state case law, the Michigan Court of Appeals found that trial counsel was not ineffective and denied relief on these claims. The court explained, in relevant part:

> Having reviewed the available record, we conclude that defendant's claims of ineffective assistance of counsel primarily involve matters of trial strategy. This Court will not second-guess counsel regarding matters of trial strategy and, "even if defense counsel was ultimately mistaken, this Court will

21

not assess counsel's competence with the benefit of hindsight." [*People v. Rice*, 597 N.W.2d 843, 852 (Mich. Ct. App. 1999).] With regard to defendant's claim that his counsel ineffectively failed to move for the appointment of an investigator to find other witnesses, defendant acknowledges that he does not have information as to what the absent witnesses would have testified to. Thus, defendant's argument, that the sheer number of potential but uncalled witnesses (as purportedly indicated in discovery materials) demonstrates a reasonable likelihood that the outcome of the trial would have been altered, is unsubstantiated. Moreover, as previously noted, the issue of witness bias was not outcome determinative. Therefore, defendant's correlative argument that trial counsel was ineffective in failing to adequately pursue this issue is without merit.

Likewise, defendant's claim of ineffective assistance based on his counsel's failure to object to prosecutorial misconduct also fails, in light of our conclusion, see text, *supra*, that the alleged misconduct does not warrant reversal of defendant's conviction. A trial attorney need not register a meritless objection to act effectively. [*People v. Snider*, 608 N.W.2d 502, 517 (Mich. Ct. App. 2000).] Finally, the record indicates that trial counsel argued competently, albeit unsuccessfully, the motion to suppress identification testimony. In sum, defendant has not affirmatively demonstrated that counsel's performance was objectively unreasonable and so prejudicial as to deprive him of a fair trial. [*People v. Watkins*, 634 N.W.2d 370, 380 (Mich. Ct. App. 2001); *People v. Knapp*, 624 N.W.2d 227, 243 (Mich. Ct. App. 2001).]

*Greene*, 2002 WL 31310150, at *4.

The decision of the Michigan Court of Appeals is neither contrary to Supreme Court precedent nor an unreasonable application of federal law to the facts. First, the "flick 'em" statement was relevant to the shooting and admissible as a party admission under state law. *See* Mich. R. Evid. 801(d)(2). Petitioner has failed to show that it should have or would have been excluded. Defense counsel cannot be deemed deficient for failing to make a futile objection or motion. *Ludwig*, 162 F.3d at 459; *McQueen*, 99 F.3d at 1328.

Second, Petitioner has not provided any factual support for his claim that trial counsel was ineffective for failing to move for an investigator to locate additional

witnesses.  For example, he has offered no affidavits from potential witnesses to show

that they would have provided favorable testimony in order to demonstrate that

counsel's conduct was prejudicial.  Conclusory allegations, without evidentiary support,

do not provide a basis for federal habeas relief.  *See Cross v. Stovall*, 238 F. App'x 32,

39-40 (6th Cir. 2007) (holding on consideration of habeas petitioner's ineffective-

assistance claim that "conclusory assertions fall far short of showing actual prejudice");

*Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (denying habeas relief on claim that

counsel on direct appeal was ineffective for failing to raise various issues when

petitioner's "allegation is merely conclusory").

Third, as to the failure to move for a missing witness instruction, Petitioner has

not shown that such an instruction was justified under state law.  The claimed "missing

witnesses" are not listed but uncalled prosecution witnesses, rather they are thirty

names listed on blank witness statements obtained by the investigating police officers.

The prosecution was not required to produce such witnesses, and their names were

available to the defense.  Thus, a request for a missing witness instruction would have

been futile.  Counsel cannot be deemed deficient for failing to make such a request.

*Ludwig*, 162 F.3d at 459; *McQueen*, 99 F.3d at 1328.  Moreover, the record indicates

that trial counsel elected to use the blank statements to the defense's advantage by

claiming shoddy police work.  Such a strategy was reasonable under the circumstances.

The fact that counsel's strategy was unsuccessful does not mean that he was

ineffective.  *See Campbell v. Coyle*, 260 F.3d 531, 551 ("[A]n

ineffective-assistance-of-counsel claim cannot survive so long as the decisions of a

defendant's trial counsel were reasonable, even if mistaken.").

Fourth, Petitioner's claim that counsel failed to sufficiently argue for the admission of impeaching evidence against witness Harold Outley is belied by the record. Counsel moved and argued for the admission of the evidence, but the trial court denied his request. Petitioner has not provided case law in support of this claim or otherwise explained with specificity what more counsel could have done that would have persuaded the trial court to rule differently. Additionally, given the Michigan Court of Appeals' decision and this court's ruling that any error in precluding the testimony was harmless, Petitioner cannot establish that he was prejudiced by counsel's conduct.

Fifth, Petitioner has not shown that counsel was ineffective for failing to achieve suppression of identification testimony. The record reveals that counsel moved to suppress the relevant identifications and filed a brief, citing case law, in support of the motion. The fact that the trial court wanted additional case law and ultimately denied the motion does not establish that the papers counsel did present to the court fell below reasonable professional standards. Even if they had, Petitioner has not demonstrated any actual prejudice, as he has not shown that the motion would have been granted had counsel briefed it more effectively. *Cf. Worthington v. United States*, 726 F.2d 1089, 1092-94 (6th Cir. 1984) (Contie, J., concurring) ("[W]hether trial counsel in the present case acted incompetently in not filing a timely motion to suppress depends upon the merits of the search and seizure question.").

Lastly, Petitioner asserts that trial counsel was ineffective for failing to object to the alleged instances of prosecutorial misconduct. As discussed above, this failure to object did not amount to ineffective assistance of counsel. Habeas relief is not

warranted on Petitioner's claims that his trial counsel rendered constitutionally deficient representation.

### 4. Evidentiary Hearing

Petitioner's final claim based upon the issues raised on his direct appeal concerns the trial court's denial of his request for an evidentiary hearing on his motion to suppress identification testimony. Because Petitioner's argument is based on the trial court's alleged violation of state law in denying him an evidentiary hearing, *see* Mich. Ct. R. 6.110(D), he is not entitled to habeas relief. A state court's alleged failure to properly apply state law or its own procedural rules, even if well-established, is not cognizable on federal habeas review. *See Baze v. Parker*, 371 F.3d 310, 322 (6th Cir. 2004) ("The Supreme Court has made clear that 'federal habeas corpus relief does not lie for errors of state law.'" (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990))). This court's power to grant a writ of habeas corpus only extends to errors in the application of federal law. *E.g., Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Habeas relief is not warranted on this claim.

### B. Collateral Review Claims

Respondent contends that Petitioner's collateral review claims are barred by procedural default because Petitioner first raised those claims on post-conviction collateral review and the state courts denied relief pursuant to Michigan Court Rule 6.508(D). As discussed, federal habeas relief is precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright*, 433 U.S. at 85-87. The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied

25

upon by the state courts, and the procedural rule is "adequate and independent."
*White*, 431 F.3d at 524.

Petitioner exhausted these claims in the state courts in his motion for relief from judgment and related appeals. The Michigan courts denied relief while citing to Michigan Court Rule 6.508(D), which provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds on appeal and actual prejudice resulting therefrom. *See* Mich. Ct. R. 6.508(D)(3). Because the trial court's decision is the last reasoned opinion on Petitioner's motion for relief from judgment, this court looks to that decision to determine the basis for the denial of post-conviction relief. *See Ylst*, 501 U.S. 797, 803 (1991); *Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc).

In this case, the state trial court clearly denied relief on procedural grounds. The court cited Michigan Court Rule 6.508(D) in addressing these claims, concluded that Petitioner had not shown cause or actual prejudice under Rule 6.508(D)(3), and denied relief. Consequently, the five claims Petitioner renews in this court after pursuing them in his motion for relief from judgment are procedurally defaulted.

As noted, a state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750-51. Petitioner asserts ineffective assistance of appellate counsel as cause to excuse his procedural default. Again, Petitioner can establish ineffective assistance of counsel only by

26

demonstrating "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). As the Supreme Court has explained: "For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy . . . . Nothing in the Constitution or our interpretation of that document requires such a standard." *Id.* at 754. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59-60 (6th Cir. 1990) (citing *Jones*, 463 U.S. at 751). "[T]he hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones*, 463 U.S. at 751-52). "'Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of appellate counsel be overcome.'" *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal. *Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003) (quoting *United States v. Cook*, 45 F.3d 388, 395 (10th Cir. 1995)).

Petitioner has failed to show that, by omitting the claims presented in his motion for relief from judgment, appellate counsel's performance fell outside the wide range of professionally competent assistance.  Appellate counsel presented sixteen claims on direct appeal concerning the right of confrontation, the conduct of the prosecutor, the effectiveness of trial counsel, and the need for an evidentiary hearing.  Such claims, although ultimately unsuccessful, were substantial.  The claims presented in the motion for relief from judgment are not obviously stronger than the claims raised by appellate counsel on direct appeal.  To be sure, in considering the prejudice component of Rule 6.508(D) when deciding Petitioner's motion for relief from judgment, the trial court found that his claims lacked merit.  Petitioner has thus failed to demonstrate that appellate counsel was ineffective so as to establish cause to excuse his procedural default.

A federal court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default.  *Smith*, 477 U.S. at 533; *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983).  Nonetheless, the court notes that it would find that the defaulted claims lack merit for the reasons stated by the trial court in denying the motion for relief from judgment.  *People v. Greene*, No. 00-000764 (Mich. Cir. Ct. Aug. 27, 2007) (opinion and order denying motion for relief from judgment).

Furthermore, as explained above, Petitioner cannot overcome his procedural default by demonstrating that a fundamental miscarriage of justice has occurred.  *See Coleman*, 501 U.S. at 750.  He has not come forward with new and reliable evidence which shows that he is factually innocent.  *See Bousley*, 523 U.S. at 623-24; *Schlup*, 513 U.S. at 324.  Petitioner's collateral review claims are thus barred by procedural default, lack merit, and do not warrant relief.

28

## C.  Actual Innocence

Lastly, Petitioner seems to assert an independent claim that he is entitled to habeas relief because he is actually innocent.  It is well-settled that claims of actual innocence based upon newly discovered evidence "have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."  *Herrera v. Collins*, 506 U.S. 390, 400 (1993).  "[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact."  *Id.*  Although the Supreme Court has assumed that "a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional," *id.* at 417; *see also House v. Bell*, 547 U.S. 518, 555 (2006), the Sixth Circuit has ruled that a free-standing claim of actual innocence based upon newly discovered evidence does not justify federal habeas relief in a non-death penalty case, *Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007).  Consequently, Petitioner's allegation that he is actually innocent does not state a claim upon which habeas relief can be granted.

## IV.  CERTIFICATE OF APPEALABILITY

Before Petitioner may appeal this decision, a certificate of appealability must issue.  *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "A petitioner satisfies

this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). In applying this standard, the court must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id.* at 336-37. When a court denies a habeas claim on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack*, 529 U.S. at 484-85.

Having considered the matter, the court concludes that Petitioner has not made a substantial showing of the denial of his constitutional rights such that his habeas claims deserve encouragement to proceed further. In the court's view, reasonable jurists could not debate the correctness of either the court's resolution of Petitioner's constitutional claims or the court's procedural rulings. The court declines to issue Petitioner a certificate of appealability

## V.  CONCLUSION

For the reasons stated, IT IS ORDERED that the petition for writ of habeas corpus [Dkt. # 3] and amended petition for writ of habeas corpus [Dkt. # 12] are DENIED.

30

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.


 s/Robert H. Cleland_____
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  June 28, 2012


I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, June 28, 2012, by electronic and/or ordinary mail.

 s/Lisa Wagner_____
Case Manager and Deputy Clerk
(313) 234-5522